**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BENJAMIN ASHMORE, Individually and as Father of F.A. and B.A. II, | Civil Action No.: 11-5708 (JLL) |
| Plaintiffs, | |
| v. | **OPINION** |
| JEFFREY ASHMORE, et al., | |
| Defendants | |

**LINARES**, District Judge.

This matter comes before the Court by way of a Motion to Dismiss Plaintiff's Complaint filed by Defendants Jeffrey and Patti Ashmore, Brian and Cathy Ashmore, Jan and Thomas Wagner, and Anne Shepard ("Defendants") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(2). [Docket Entry No. 3]. Defendants also seek to dismiss any claims brought on behalf of Plaintiff's minor children, F.A. and B.A. II, alleging that Plaintiff does not have authority to bring suit on their behalf. The Court has considered Defendants' submissions and Plaintiff's opposition thereto, and rules on the Motion on the papers. Fed. R. Civ. P. 78. For reasons set forth below, the Court **GRANTS** Defendants' Motion to Dismiss with prejudice.

## I. BACKGROUND

Plaintiff Benjamin Ashmore is currently a resident of Bergen County, New Jersey. (Notice of Removal, ¶ 3). Plaintiff married Kelly (Wagner) Ashmore ("Kelly Ashmore") on July 26, 1997, and they had three children, F.A., B.A. II, and L.A. (Compl., ¶¶ 2-3). Defendants

Jeffrey and Patti Ashmore are Plaintiff Benjamin Ashmore's parents, and Defendant Brian

Ashmore is Defendant Jeffrey Ashmore's brother. (<u>Id.</u>, ¶ 6). Defendant Cathy Ashmore is the

spouse of Defendant Brian Ashmore. (<u>Id.</u>). Defendants Jan and Thomas Wagner are the parents

of Kelly Ashmore, and Defendant Anne Shepard is the spouse of Defendant Jan Wagner's

brother (<u>Id.</u>).

On June 30, 2011, a final Judgment of Divorce was entered, dissolving the marriage

between Plaintiff and Kelly Ashmore. (<u>Id.</u>). The divorce proceedings included proceedings to

determine custody of the couple's three children. (Defs.' Mot. to Dismiss, at 2). The alleged

defamatory statements that are the subject of the current action occurred during the course of

those divorce and custody proceedings in which Defendants, the Plaintiff and Kelly Ashmore's

family members, were involved. Plaintiff alleges that Defendants maliciously defamed him with

"slanderous and libelous statements of fact about the plaintiffs which were known to be false and

were offered with reckless disregard to their falsity, and which were communicated to other

persons." (<u>Id.</u>, ¶ 1).

Kelly Ashmore initiated the custody proceedings when she filed for custody of the

couple's children in Michigan in 2007. On September 11, 2007, Defendants Jeffrey and Patti

Ashmore as well as Defendants Jan and Thomas Wagner met in Michigan to discuss how to

"preserve" the Plaintiff's marriage with Kelly Ashmore. (<u>Id.</u>, ¶ 2). The following day, on

September 12, 2007, Defendant Jeffrey Ashmore drove from Michigan to New York, where

Plaintiff was then residing, to deliver an ultimatum to Plaintiff, about which said Defendant later

wrote, "I last spoke to my son, Benjamin, in September 2007 and I informed him that unless he

ends his adulterous relationship with his mistress, immediately, and return to his wife and

2

children, that his mother and I would not talk to him or support him in any manner." (Id., ¶ 8).

When Plaintiff refused to reconcile with his then wife, Kelly Ashmore, Defendants Jan and

Thomas Wagner, and Defendant Jan Wagner's brother traveled to New York where on

September 17, 2007, they unsuccessfully sought an Order of Protection for the former Mrs. Kelly

Ashmore against Plaintiff in the Family Court for Kings County, New York. (Id., ¶ 9). On

September 18, 2007, Defendants Jan and Thomas Wagner took Kelly Ashmore and the couple's

two children from New York to Michigan where Kelly Ashmore filed for custody in the

Michigan Circuit Court for Oakland County, alleging that she fled for fear of her life "and the

safety of the minor children" since her husband was doing cocaine, "inappropriately involving

the children with a paramour," and was "striking, beating, threatening and screaming . . . in front

of the minor children." (Id., ¶ 10).  While in Michigan, Kelly Ashmore was served with two

separate Writs of Habeas Corpus out of the New York Family Court wherein the Court had

determined "that the children were intentionally removed from New York State and to another

state, and an effort made, as the Court has said, to subvert the jurisdiction of this Court with

respect to the matter." (Id., ¶ 12).

Kelly Ashmore eventually moved into the home of Defendants Jeffrey and Patti Ashmore.

(Id., ¶ 13).  When Kelly Ashmore appeared in Family Court and produced the children, the

Family Court awarded sole custody to Plaintiff, and prohibited Kelly Ashmore from any

overnight visitation or from removing the children from the jurisdiction of the Court during her

extremely limited visitation. (Id., ¶ 14).  Kelly Ashmore then transferred the custody litigation

from the Family Court to the New York Supreme Court, where litigation lasted from 2007 until

2011 and encompassed two separate Supreme Court trials. (Id., ¶ 15).  Kelly Ashmore also

3

brought additional claims in Article 78 proceedings, the Michigan Circuit Court for Oakland

County, the Bureau of Special Hearings of the State of New York Office of Children and Family

Services, and the Appellate Division, Second Judicial Department of the Supreme Court, State of

New York. (Id.). The New York Supreme Court reaffirmed the Family Court order, but with

Plaintiff's consent, modified restrictions placed on Kelly Ashmore from bringing the children in

contact with Jeffrey, Patti, Brian and Cathy Ashmore. (Id.).

     In preparation for the Plaintiff and Kelly Ashmore's divorce proceeding, the intermediary

trial court appointed a psychologist, Dr. Wilma Cohen Lewis, to perform forensic psychological

evaluations of Plaintiff, Kelly Ashmore, their children, as well as to conduct interviews with the

named Defendants as "collaterals." (Id., ¶¶ 21-22). Those interviews as well as documents

submitted by Defendants to Dr. Lewis provided Defendants' views of Plaintiff and Kelly

Ashmore's marriage and their respective relationships with their children, and those statements

compose the most significant portion of the subject statements brought before this Court on

Plaintiff's defamation claim. (Id., ¶ 22). Dr. Lewis submitted a report of her findings in the

underlying proceedings, which stated the following:

> "By all accounts of both families, the relationship between Ben and Kelly was one of
> Ben's obsessive control, domination and denigration of Kelly and her passive submission.
> . . .
>
> [Tom and Jan Wagner] . . . agonize over 'all the mental harm' Ben is doing to the
> children.
> . . .
> [Anne Shepherd] knows that [Ben] is a pathological liar and a psychopath. She knows he
> is a narcissistic personality disorder. She and her husband had put their reputations on the
> line and gave Ben a responsible job when he and Kelly first married, only to be
> embarrassed publically by his pathological lying and lack of ethics – and struck by his
> lack of remorse. . . .Despairing, like the maternal grandparents, that Ben disregards and
> violates with impunity every suggestion, Order and recommendation he does not like

while under the scrutiny of the Court, the Parent Coordinator, the Law Guardian, and the Forensic Evaluator.

. . .

[Cathy and Brian Ashmore] describ[e] Ben as 'very controlling,' 'paranoid,' and 'a world class manipulator' who 'stretches the truth,' . . . [and] are supporting Kelly because of Ben's long-standing verbal and emotional abuse of her. . . .

. . .

[Jeffrey and Patti Ashmore] agonize and search for what they may have done to produce a child whose behavior is so destructive and reprehensible. . . .They deplored 'Ben's mental abuse of Kelly,' 'his attitude of complete control of Kelly,' 'especially in the kitchen,' criticizing every small thing.' . . . "

(Id., ¶ 25). Plaintiff alleges that all statements made by Defendants regarding excessive contact with his children, Plaintiff's employment, court proceedings and orders of protection were not true, and, additionally, written documents submitted by Defendants to other individuals including Dr. Lewis and the Attorney for the Children also contained written libelous statements. (Id., ¶ 26-27).

Further, Defendant alleges as defamatory statements made to the "trial court's appointed attorney for the [Ashmore] children," Brad Nacht, Esq., as well as to Howard Yagerman, Esq., the attorney for Kelly Ashmore in the underlying divorce proceedings. (Id., ¶¶ 18-23; Ex. A). Finally, Plaintiff alleges as defamatory Defendant Thomas Wagner's referral of Plaintiff to the New York City Administration for Children's Services ("ACS") on April 7, 2008 for child abuse. (Id., ¶ 28). When the incident was introduced at the divorce proceeding, ACS returned an indicated report determining that Plaintiff had inadequately supervised the children, but upon appeal, and after discovery and examination of the facts, the report was amended to "unfounded" and removed from the New York State Central Registry of Child Abuse. (Id.).

On August 22, 2011, Plaintiff filed a Complaint in the Superior Court of New Jersey, Bergen County, alleging that Defendants made defamatory statements within the course of his

5

divorce proceeding captioned <u>Ashmore v. Ashmore</u> in the Supreme Court of the State of New York, County of Kings, involving Plaintiff and his ex-wife, Kelly (Wagner) Ashmore. (<u>Id.</u>, ¶¶ 1-2). All named Defendants in the action are residents of Michigan. (<u>ld.</u>, ¶¶ 4-7). On September 30, 2011, Defendants removed the action from the Superior Court of New Jersey, Bergen County, to this Court on the basis of its diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1)-(2). [Docket Entry No. 1].

## II. LEGAL STANDARD

Defendants present two grounds on which to dismiss Plaintiff's Complaint before this Court. First, Defendants assert that Plaintiff's Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6). In reviewing such motions, a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable" to the plaintiff. <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 228 (3d Cir. 2008); <u>see also</u> <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1995, 1965 (2007). "However, a court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss." <u>Evancho v. Fisher</u>, 423 F.3d 347, 350 (3d Cir. 2005). A complaint survives a Rule 12(b)(6) motion to dismiss if it states a claim to relief that is "plausible on its face" regarding plaintiff's entitlement to the relief sought. <u>Twombly</u>, 127 S.Ct. at 1965-66. A complaint may be dismissed for failure to state a claim upon which relief can be granted if the court finds "beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).

Defendants also argue that the matter must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Personal jurisdiction may be established over non-resident defendants served pursuant to Rule 4(e), "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located . . ." Fed. R. Civ. P. 4(e)(1). District courts sitting in New Jersey apply the New Jersey long-arm statute, N.J. Ct. R. 4:4-4, to determine whether the Court may exercise personal jurisdiction over a defendant in accordance with the Due Process Clause of the Fifth Amendment. See Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945). In this determination, the court considers whether the assertion of personal jurisdiction accords with the notions of fair play and substantial justice, evaluating the following factors: "the burden on the defendant, the interests of the forum State, . . . . plaintiff's interest in obtaining relief[,] . . . . 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several states in furthering fundamental substantive social polices.'" Mesalic v. Fiberfloat Corp., 897 F.2d 696, 701 (3d Cir. 1990)(quoting Asahi Metal Industry Co. v. Superior Court, 480 U.S. 102, 113 (1987)).

## III. DISCUSSION

### A. Rule 12(b)(6) Motion to Dismiss

Defendants argue that Plaintiff's Complaint should be dismissed for failure to state a claim pursuant to Rule 12(b)(6) since all of the alleged defamatory statements made by the Defendants were in the furtherance of the Ashmore's divorce and custody proceeding and are thus protected by the absolute litigation privilege. (Defs.' Mot. to Dismiss, at 2). Plaintiff

7

contends that the absolute litigation privilege does not apply in this case for two reasons: 1) the statements were not made in judicial or quasi-judicial proceedings; and 2) Defendants were not litigants or other participants authorized by law.

1.  Applicable Law on Defamation and the Absolute Litigation Privilege

To establish a defamation claim under New Jersey law, Plaintiff must show, in addition to damages, that: (1) Defendants made false and defamatory statements concerning Plaintiff; (2) the statements were communicated to another person and were not protected by privilege; and (3) fault on the part of Defendants amounting at least to negligence.  See DeAngelis v. Hill, 180 N.J. 1, 12-13 (2004).  A statement is "defamatory" if it "subjects an individual to contempt or ridicule" or "harms a person's reputation by lowering the community's estimation of him or by deterring others from wanting to associate or deal with him."  G.D. v. Kenny, 205 N.J. 275, 293 (2011).

The absolute litigation privilege has been recognized under New Jersey law as granting immunity in the context of defamation claims.  Hawkins v. Harris, 141 N.J. 207, 214("The doctrine that an absolute immunity exists in respect of statements, even those defamatory and malicious, made in the course of proceedings before a court of justice, and having some relation thereto, is a principle firmly established")(citing Fenning v. S.G. Holding Corp., 47 N.J. Super. 110, 117 (App. Div. 1957).  Defamatory statements are protected by this absolute privilege, making said statements no longer actionable, if the statements are communications: "(1) made in judicial or quasi-judicial proceeding; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to

8

the action." Id., at 216 (citation omitted).  See also Williams v. Kenney, 370 N.J. Super. 118,

133 (2005).  The rationale for the privilege is the "need for unfettered expression critical to

advancing the underlying government interest at stake in those settings."  Hawkins, 141 N.J. at

213 (quoting Erickson v. Marsh & McLennan Co., Inc., 117 N.J. 539, 563 (1990)).  Whether a

defendant is entitled to the privilege is a question of law for the court to decide.  Id. at 216.


## 2.  Applicability of the Absolute Litigation Privilege to Defendants' Statements

Plaintiff alleges that Defendants made libelous and untrue statements with regard to three

broad sets of communications made in the context of the underlying matrimonial and custody

proceedings in the Supreme Court of the State of New York, County of Kings, Ashmore v.

Ashmore: (1) communications between Defendants and Dr. Lewis regarding her forensic

evaluations as a court-appointed psychologist in the underlying matter; (2) Defendants'

communications with the Law Guardian in the underlying matter, Brad Nacht, as well as with

Kelly Ashmore's attorney in the underlying matter, Howard Yagerman; and (3) Defendants Jan

and Thomas Wagner's referral of Plaintiff to ACS under accusations of child abuse.  Those

separate categories of statements will be dealt with individually below.

As a general matter, Defendants group all of the alleged defamatory statements as

protected by the absolute litigation privilege.  Defendants argue that said statements meet all four

prongs of the Hawkins privilege test as they were made in the course of the Ashmore v. Ashmore

judicial proceedings by themselves as witnesses and participants authorized by law with a logical

relation to said proceedings and to achieve the final objects of the litigation–appropriate custodial

arrangements for Plaintiff and Kelly Ashmore's children.  Plaintiff contends that Defendants'

9

statements do not meet the first and second prongs of the <u>Hawkins</u> test.  Specifically, Plaintiff

argues that Defendants' statements were not made in any judicial or quasi-judicial proceeding

since they were not made in court and under oath, subject to cross-examination and were made to

other officers or bodies, reverting those statements to a "qualified privilege . . . inducing a jury

issue as to the elements of malice, reasonable cause, good faith and the like."  (Pl. Opp'n to

Defs.' Mot. to Dismiss, at 4-5).  Second, he argues that Defendants have not shown that they

were litigants or other participants authorized by law in the underlying proceedings, and that even

the extension of the privilege to "jurors, witnesses, parties and their representatives" under New

Jersey law does not apply to their status in the underlying proceedings.  (<u>Id.</u>, at 4).

      a.  Defendants' Statements to Dr. Lewis

      Dr. Wilma Cohen Lewis was appointed by the trial court in New York prior to the

<u>Ashmore v. Ashmore</u> proceedings to perform a forensic psychological evaluation of Plaintiff,

Kelly Ashmore, and their children, and she was also directed to provide a recommendation to the

Court concerning custody of the children and parental access.  (Compl., ¶ 21).  Dr. Lewis was

tasked with conducting extensive interviews with Defendants as "collaterals" and reviewed

documents each of them provided her concerning Plaintiff and Kelly Ashmore's marriage and

children.  (Compl., ¶ 22).  Dr. Lewis completed a report and testified at the underlying

proceedings regarding her findings.  (Compl., ¶¶ 25-27; Pl.'s Opp'n to Defs.' Mot to Dismiss,

Ex. E).  The Court must accept as true all factual allegations in Plaintiff's Complaint and draw all

inferences from the facts alleged in the light most favorable to the Plaintiff.  Accepting those

facts as true, Defendants made statements concerning Plaintiff to a third party, Dr. Lewis,

depicting him as a liar, an abusive husband, and a "psychopath," among other epithets, as they

described their experiences with the Plaintiff and his children.  While a jury could find that these statements were defamatory and libelous, this Court finds that they are protected by the absolute litigation privilege as a matter of law since they meet all of the <u>Hawkins</u> requirements.

First, they were made in the course of the underlying judicial proceeding, <u>Ashmore v. Ashmore</u>.  New Jersey courts favor a "broad interpretation of the phrase 'in the course of a judicial proceeding.'" <u>DeVivo v. Ascher</u>, 228 N.J. Super. 453, 458 (1988).  Further, New Jersey courts have been consistent in holding that the privilege is not limited to statements made during trial or under oath, but rather extends to quasi-judicial proceedings before an administrative agency, statements or communications made in connection with judicial proceedings, statements made during settlement negotiations, engaging in private conferences with an attorney with reference to the litigation, and engaging in pre-trial communications such as "preliminary conversations and interviews" with prospective witnesses. See <u>Fenning v. S.G. Holding Corp.</u>, 47 N.J. Super. 110, 117-18 (1957); <u>DeVivo</u>, 228 N.J. Super. at 457-58; <u>Zagami, LLC v. Cottrell</u>, 403 N.J. Super. 98, 107 (App.Div. 2008)); <u>Hawkins</u>, 141 N.J. at 216.  The purpose of extending the privilege beyond in-court proceedings is that limiting protections to such contexts alone would "inhibit potential witnesses from coming forward, impede the ability of litigants to engage in discovery and investigation, and encumber settlement negotiations." <u>Williams v. Kenney</u>, 379 N.J. Super. 118, 134 (2005)(citing <u>DeVivo</u>, 228 N.J. Super. at 458-59).  If such a witness were not protected by the privilege, they "might be inclined to shade [their] testimony in favor of the potential plaintiff, to magnify uncertainties, and thus to deprive the finder of fact of candid, objective, and undistorted evidence." <u>Hawkins</u>, 141 N.J. at 217.

Therefore, Plaintiff is wrong when he argues that the absolute litigation privilege only

11

applies to in-court proceedings to statements made under oath and subject to cross-examination. Plaintiff is correct in asserting that a qualified privilege may apply in the context of quasi-judicial proceedings where an assessment must be made regarding whether appropriate safeguards are in place to assure that statements made are made with neutral oversight, availability of review on appeal, and the presence of "retarding influences" such as the presence of attorneys to object, an impartial decision-maker to review the admissibility of evidence and opportunities given to parties to rebut. See Zagami, 403 N.J. Super. at 109-11. However, the underlying proceedings were not quasi-judicial, but rather occurred in the course of trial proceedings at the Supreme Court of the State of New York, County of Kings. Further, Dr. Lewis was a court-appointed psychologist tasked not only to speak with Plaintiff, Kelly Ashmore and their children, but specifically to speak with and receive information from the Defendants as "collaterals" regarding the custodial matters in the proceedings. Dr. Lewis was thus given a delineated task for pre-trial discovery, which clearly fits within the parameters of "pretrial communications by parties and witnesses [that] are protected 'to promote the development and free exchange of information and to foster judicial and extra-judicial resolution of disputes.'" Hawkins, 141 N.J. at 218 (citation omitted).

Second, the statements were made by "litigants or other participants authorized by law," namely, by witnesses involved in the litigation. "Litigants" and "participants" include jurors, witnesses, parties, and their representatives in the hope that "persons in such circumstances be permitted to speak and write freely without the restraint of fear of an ensuing defamation action, this sense of freedom being indispensable to the due administration of justice." Hawkins, 141 N.J. at 214 (citing Fenning v. S.G. Holding Corp., 47 N.J. Super. 110, 117 (App. Div. 1957).

The named Defendants were designated as "collaterals" from whom statements were sought and who were interviewed by a court-appointed psychologist, and those interviews were done to assist her in "provid[ing] a recommendation to the Court concerning custody of the children and parental access." (Compl., ¶¶ 21-22). The main purpose of granting an absolute privilege with regard to witnesses as set out in the case law is particularly applicable here where the court in the underlying proceedings sought candid information from the named Defendants, and it is critical that the statements of such witnesses not be "distorted by the fear of subsequent liability." See Hawkins, 141 N.J. at 217.

Plaintiff does not contest that the third and fourth prongs apply to the statements, as he states in his Complaint that, "[a]lthough the defendants defamatory statements made in the context of litigation but outside of trial were potentially protected by absolute privilege, it was only insofar as they were applicable to statements made during the litigation in a judicial proceeding." (Compl., ¶ 23). The Court finds that Defendants statements were made to achieve the objects of the litigation–i.e., the determination as to child custody–and had a logical relation to the action, namely to recommend to the court ideal custodial arrangements and parental access based on Dr. Lewis' psychological evaluations and expertise.

For these reasons, this Court finds that Defendants' statements, while potentially defamatory, are protected under the absolute litigation privilege under Hawkins. Therefore, Plaintiff cannot meet the requisite elements of a cause of action for defamation under New Jersey law, and his claims for defamation are dismissed with respect to Defendants' statements made to Dr. Lewis in the course of the underlying proceedings of Ashmore v. Ashmore.

b. Defendants' Statements to Law Guardian Brad Nacht and Attorney Howard Yagerman

13

<u>i.  Statements to Law Guardian Brad Nacht</u>

Brad Nacht was appointed by the Honorable Eric I. Prus as the Law Guardian representing Plaintiff's children in the underlying proceedings on July 15, 2009.  (Pl. Opp'n to Defs.' Mot. to Dismiss, Ex. F, ¶ 1).   As the children's attorney in the proceedings, Mr. Nacht was tasked with "ascertain[ing] the current positions of his clients" regarding custodial arrangements, and representing to the court those positions so that the court could consider whether, at various stages of the proceedings, the totality of the circumstances warranted a modification and such change as would be in the best interests of the children.  (<u>Id.</u>, ¶¶ 8-9).  The statements referenced by Plaintiff in his Complaint regarding the named Defendants' communications with Brad Nacht were the following letters addressed to him: (1) a letter from Defendant Cathy Ashmore dated January 7, 2008; and (2) a letter from Defendants Jeffrey and Patti Ashmore dated January 11, 2008.

The Court will first detail the substance of the alleged defamatory letters by Defendants Cathy, Jeffrey and Patti Ashmore.  The proclaimed purpose of Cathy Ashmore's letter to Mr. Nacht was to provide "information which I hope will help you in your decisions in this matter" and to notify him, after "seeing [the children] when they were in Michigan in June and September and speaking with them on the phone . . . [of] what damage is being done to them." (Compl., Ex. A, "Letter from Cathy Ashmore to Brad Nacht").  The letter proceeds to allege that Plaintiff "has decided that his family is intent on brainwashing his children against him," and that he "has used them to his advantage throughout the divorce." (<u>Id.</u>).  It further states that "Benjamin is a very controlling and manipulative man," and that his "emotional abuse on Kelly throughout their marriage is deplorable." (<u>Id.</u>).  The letter states that Plaintiff "has told his

14

children horrible things about their mother that no child should have to hear.  Like 'Your mother has terrible thoughts about you and about hurting you.'  When the children were asked about their father's 'special friend' they told the previous Law Guardian that there was no 'special friend.'  I don't know what Benjamin said to them but it is a lie.  Benjamin has been having an affair with his girlfriend since before June, 2007 and without regard to anyone, flaunted it in our faces." (Id.).  Finally, the letter expresses concerns about Defendant Cathy Ashmore's relationship with Plaintiff's children, stating that the children's visits to them and ongoing communications and gift exchanges were being deprived from both parties through Defendant's actions: "These are things Benjamin is taking away from the children." (Id.).  Defendant Cathy Ashmore then notified Mr. Nacht that she and her husband were willing to come to New York to testify in the case "if you think it would help the children and allow us to be able to see them," leaving her contact information and available times for contact.  (Id.).

Jeffrey and Patti Ashmore's letter to Mr. Nacht explicitly regarded the issuance of a court order allowing their access to Plaintiff's children, opening with: "My wife and I are petitioning the court to have legal rights to communicate with our grandchildren, F[], B[], and L[] Ashmore. . . . Benjamin and Kelly are currently involved in divorce proceedings in the city of New York and you have been assigned as the Law Guardian in this case."  (Id., Ex. A, "Letter from Jeffrey and Patti Ashmore to Brad Nacht").  The letter states that Defendants Jeffrey and Patti Ashmore "are supporting Kelly Lynn Ashmore throughout these divorce proceedings," that they "prefer to communicate with the children while they are in the care of their mother Kelly Lynn Ashmore and in her place of residence," details the extent of prior communications and contact with Plaintiff's grandchildren, and states that they have been prevented from communicated with

those grandchildren. (<u>Id.</u>). The letter makes no derogatory reference to the Plaintiff aside from asserting the Defendants' support for Kelly Ashmore and stating that the "unacceptable conditions that Benjamin is placing on Patti and I and the rest of the Ashmore family are due to the current divorce proceedings and are not based on any factual concern or danger the children would be in if allowed to communicate with Patti and I or to visit us when they are in Michigan over the holiday or any other time, for that matter." (<u>Id.</u>). The letter concludes by stating that letters of recommendation from leaders of the community are enclosed regarding their personal integrity and parenting skills, and stating that they, Jeffrey and Patti Ashmore, "implore you to look at all of facts regarding this divorce proceeding and address the court on our behalf to secure the right to communicate with our grandchildren and to be allowed to physically see the children, while in the care of their mother, Kelly Lynn Ashmore." (<u>Id.</u>).

Defendants claim that the statements made to Mr. Nacht were made to him specifically as the court-appointed Law Guardian in the underlying proceedings of <u>Ashmore v. Ashmore</u> in his capacity to advocate for the best interests of the children regarding custodial arrangements. (Defs.' Mot. to Dismiss, at 10). Specifically, they assert that the statements were submitted to offer their respective opinions regarding the best interests of the children. Plaintiff argues, however, that Defendants' statements to Mr. Nacht were not made as witnesses in pre-trial discovery or in depositions, so they were not made in a judicial or quasi-judicial proceeding by participants authorized by law. (Pl. Opp'n to Defs.' Mot. to Dismiss, at 6). Plaintiff also claims that Defendants were acting not in their official capacities but in their personal capacities when they took it upon themselves to send the defamatory statements to Mr. Nacht. (<u>Id.</u>, at 7).

In assessing whether the above-cited letters were written in the course of the underlying

16

judicial proceeding of <u>Ashmore v. Ashmore</u>, this Court again must construe that "course" broadly.  It is critical to note that the underlying proceedings regarding custodial matters required the court to consider the best interests of the children under the totality of the circumstances.  It is clear that both letters were addressed to Mr. Nacht in his capacity as the children's attorney, and the letters specifically stated their purpose as attempting to assist in the framing of custodial determinations by affected family members in the ongoing litigation.  Defendants' communications with Mr. Nacht are best understood as statements or communications made in connection with judicial proceedings where they, as witnesses to the children's relationships with their immediate family as well as other members of the family, intended to step forward with information critical for the Court in its "totality of the circumstances" review.  Denying the privilege in such a circumstance as not being made in a judicial proceeding would deter family members from communicating crucial information about background family life and dynamics to guardians and children's attorneys regarding facts about either or both parents that could severely limit both the child advocate's "best interest" assessment and the court's review of the broader circumstances of the children's lives in its custodial determination.  As cited above from <u>Hawkins</u>, denying such a witness the privilege might make the witness "inclined to shade his testimony in favor of the potential plaintiff, to magnify uncertainties, and thus to deprive the finder of fact of candid, objective, and undistorted evidence."  <u>Hawkins</u>, 141 N.J. at 217.

While the Defendants were not solicited by the court in these letters to provide information, they may nevertheless be viewed as "participants authorized by law" under the second prong of the <u>Hawkins</u> test since the named Defendants had been interviewed and solicited for information regarding the underlying proceedings, and their communications with the

children's representative regarding the best interests of those children constitutes important testimony relevant to the child advocate's task of determining those interests.  Also, Kelly Ashmore lived in the home of Defendants Jeffrey and Patti Ashmore, the children's grandparents, and a custodial arrangement in favor of the children's mother could involve the children living with said grandparents.  (Compl., ¶ 13).  In the underlying proceedings in New York, a court must base its decision regarding custodial arrangements on the totality of the circumstances, including the ages of the children, fitness of the parents, quality of the home environment, each parent's ability to provide the child's intellectual and emotional development, and the effect an award of custody to one parent would have on the child's relationship with the other parent.  See Eschbach v. Eschbach, 56 N.Y.2d 167 (1982); Winslow v. Lott, 295 A.D.2d 620 (2002).  All of Defendants' statements to Mr. Nacht related to their beliefs regarding relevant factors in the totality of the circumstances determination, and those beliefs were inextricably intertwined with such an examination and the role of the court in considering such an examination.

Finally, the letters meet the third and fourth requirements of achieving the objects of the litigation and having a logical relation to the action in that they were both explicitly intended to affect considerations regarding custodial arrangements, and in the case of Defendants Jeffrey and Patti Ashmore's letter, clearly stated that the intended purpose of the communication was to petition the Court for access to Defendants' grandchildren through the court proceedings themselves.  For the statements to meet the relevancy requirement in Hawkins, the pertinency required "is not a technical legal relevancy . . . but rather a general frame of reference and relationship to the subject matter of the action."  Hawkins, 141 N.J. at 218 (quoting Fenning, 47

18

N.J. Super. at 118). Statements regarding the children's access to their grandparents and their treatment by their father have a close relationship to the considerations of the court in the underlying subject matter before the court regarding custody. For these reasons, the Court finds that the Defendants' letters to Mr. Nacht are protected by the absolute litigation privilege.

In any event, the Court finds that the element of harm necessary to establish a defamation claim is not present with respect to Defendants' communications with Mr. Nacht. First, Plaintiff does not allege any harm resulting specifically from the communications made to Mr. Nacht in his Complaint. (Compl. ¶ 38). Second, Mr. Nacht evidenced extremely favorable words supporting the grant of custody to Plaintiff in proceedings before the Supreme Court of the State of New York, County of Kings as recently as October 11, 2011. (Pl. Opp'n to Defs.' Mot. to Dismiss, Exs. F & G, "Brad Nacht's Affirmation of Support")(stating among other favorable recommendations that "[t]he attorney for the children urges the Court to give great weight to the expressed wish of [F.A.] and [B.A.] to reside with their father in Ramsey. This attorney has articulated the children's position since the outset of the instant litigation, thus, there is no reason to believe that their expressed wishes are the result of impulse, whim or pressure or that they lack the maturity to articulate and to understand the reasons for their desire to live with their father.")

### ii.  Statements to Attorney Howard Yagerman

Howard Yagerman, Esq., is Kelly Ashmore's attorney in the underlying divorce proceedings. Although Plaintiff's Complaint does not directly allege that defamatory statements were communicated to Mr. Yagerman, Plaintiff attached letters as Exhibits to the Complaint addressed to Mr. Yagerman by Defendants, including: (1) the forwarding of Jeffrey and Patti Ashmore's January 11, 2008 letter to Mr. Nacht, cited above, to Mr. Yagerman on the same day;

and (2) Jeffrey and Patti Ashmore's April 3, 2008 letter regarding the circumstances of their supporting Kelly Ashmore over their son, the Plaintiff, in the context of Plaintiff's motion filing in the underlying proceedings; and (3) Cathy Ashmore's April 7, 2008 letter regarding Plaintiff's filing of the same motion. Plaintiff also addresses said letters in his opposition to Defendants' Motion to Dismiss.

The first letter, cited above, was a petition to Mr. Nacht to request the court to have legal rights to communicate with their grandchildren. (Compl., Ex. A, "Letter from Jeffrey and Patti Ashmore to Brad Nacht"). The second letter, dated April 3, 2008, was written from Defendants Jeffrey and Patti Ashmore, Plaintiff's parents, to Mr. Yagerman subsequent to Plaintiff's filing of a motion before the Superior Court of New York alleging that Kelly Ashmore was responsible for lack of support and alienation of his parents Defendants Jeffrey and Patti Ashmore since August 2007. (Id., Ex. A, "Letter from Jeffrey and Patti Ashmore to Howard Yagerman"). The letter notifies Mr. Yagerman that "[t]his could not be further from the truth. Patti and I have not supported our son because he has mentally abused Kelly throughout the entire marriage and has been involved in an adulterous relationship with another woman for some time prior to August 2007." (Id.). The Defendants state that they requested that their son end the adulterous relationship, and that he lied that the affair was over, asserting that "Benjamin is the one who has alienated himself from his mother and me by causing endless hardships to Kelly, his children, Tom and Jan Wagner, and even to his own siblings." (Id.). The letter also indicates that Plaintiff's behavior was "reprehensible and deplorable to the morals and principles contained in his Christian upbringing," and that Plaintiff had "actively turned his children against Patti and me through very deliberate 'brainwashing' and metal [sic] abuse." (Id.). Finally, the letter concludes

by stating that "Patti and I would like to ask that you bring to light this lie that Benjamin is perpetuating with this recent motion of his. Benjamin has lied repeatedly throughout these court proceedings. These lies must be exposed to the judge. Any assistance that Patti and I can offer, within our means, we gladly offer. Please contact us anytime." (Id.).

The third letter included in Plaintiff's Exhibits is Cathy Ashmore's letter to Mr. Yagerman, dated April 7, 2008. The letter was also drafted in response to Plaintiff's motion regarding Kelly Ashmore's responsibility for the lack of support of Plaintiff's parents, and was written upon request of Kelly Ashmore's father, Tom Wagner. (Id., Ex. A, "Letter from Cathy Ashmore to Howard Yagerman"). The letter also contests the fact that Kelly Ashmore is responsible for Plaintiff's family's lack of support, stating that "[t]he truth is Ben has done this himself. We are all getting very tired of Ben playing the martyr in this divorce case. He has slandered and blamed everyone for what has gone wrong in his life instead of taking the blame himself." (Id.). She also states that "Ben has brainwashed these children," and that the family was "losing them to his lies and manipulations." (Id.). Defendant Cathy Ashmore then offers to assist Mr. Yagerman "in this matter" if he has "any questions or would like to discuss" it, offering her contact information and times of availability. (Id.).

Defendants argue that their statements to Mr. Yagerman were made in connection with the Ashmore divorce and custody proceedings to "provide details of fact and opinion and to suggest strategy." (Defs.' Mot. to Dismiss, at 10). They further assert that the statements are protected because "the privilege . . . protects a person while engaged in a private conference with an attorney regarding the litigation" in accordance with Hawkins. 141 N.J. at 216. As such, they contend, the statements are protected under the absolute litigation privilege since they were

also made to achieve the objects of the litigation and had some connection or logical relation to the action. Plaintiff claims that the statements made to Mr. Yagerman were, like those made to Mr. Nacht, not made as witnesses in pre-trial discovery or depositions in any judicial proceeding.

The Court agrees with Defendants that their communications with Mr. Yagerman were made in connection to the underlying divorce proceeding, as each communication explicitly references the ongoing proceedings as well as their relationships with the children as a result of those proceedings. The rationale of the privilege "is to allow parties to such proceedings 'unfettered expression critical to advancing the underlying government interest at stake in those settings.'" Rickenbach v. Wells Fargo Bank, N.A., 635 F. Supp. 2d 389, 401 (D.N.J. 2009)(quoting Peterson v. Ballard, 292 N.J. Super. 575, 579 (1996)). The first letter by Defendants Jeffrey and Patti Ashmore addresses Defendants' legal rights as affected by the proceedings, and the other two letters sent to Mr. Yagerman were clearly marked as responses to a motion filed by Plaintiff in which Defendants were implicated either by name or as a representative of a Defendant mentioned by name, Kelly Ashmore's father Tom Wagner. Further, all Defendants write as representatives of Kelly Ashmore, a litigant in the case, and were sent to her attorney to provide context and strategy as to how best to vindicate her rights exclusively in the context of the proceedings. Thus, the statements clearly meet the requirements of the first prong of the Hawkins test.

Defendants also qualify as "litigants or other participants authorized by law" since the legal rights of Jeffrey and Patti Ashmore were at issue in the proceedings regarding access, communications and visitation of their grandchildren and Plaintiff filed a motion explicitly implicating them in Kelly Ashmore's behavior as it was being reviewed for custody

22

determinations.  The statements of Defendant Cathy Ashmore were also made in reference to Plaintiff's motion as a means of contextualizing said motion as a witness to Plaintiff's behavior towards the children and other family members.  Defendants Cathy Ashmore and Thomas Wagner had been involved in the proceedings as "collateral" witnesses, and their communication with Kelly Ashmore's attorney regarding her custody of the children was relevant for their potential testimony and in preparation of ongoing child custody proceedings in which a motion was pending.  Therefore, this Court finds that the statements were made by authorized participants in the proceedings to achieve the objects of the litigation and had a direct connection with the underlying action.  Defendants' letters to Mr. Yagerman are thus protected by the absolute litigation privilege.

The Court also finds that Plaintiff fails to state a claim for defamation by not alleging any facts with respect to the requisite element of harm resulting specifically from the communications made to Mr. Yagerman in his Complaint.  (Compl., ¶ 38).  Plaintiff gives no indication of how the above statements addressed to Mr. Yagerman contributed to his "physiological and mental suffering because of [his] separation" from his children as well as the alleged harm of interference with his relationships.

c.  Referral of Plaintiff to ACS

According to Plaintiff's Complaint, on April 7, 2008, Defendant Thomas Wagner referred Plaintiff to the New York City ACS, accusing him of child abuse.  The referral was allegedly made after Jan Wagner e-mailed Plaintiff a threat to make such a referral after Plaintiff prevailed in a referee hearing in the underlying matrimonial action.  However, pursuant to N.J. Stat. Ann. § 9:6-8.13, persons acting pursuant to the statute who report child abuse "have immunity from any

23

liability, civil or criminal, that might otherwise be imposed." See also Rubinstein v. Baron, 219 N.J. Super. 129 (1987)(stating that "the Legislature recognized an overriding need for the information and sought to encourage the reporting of child abuse by not only providing immunity to persons making such reports but also by making it a disorderly persons offense to fail to report where there is 'reasonable cause to believe that an act of child abuse has been committed. . . .'"). Therefore, this Court concludes that Defendant had immunity with regard to this defamation claim.

### d.  Nature of Dismissal

While this Court concludes that Plaintiff's defamation claims fail to state claims upon which relief can be granted, it must determine whether Plaintiff's Complaint should be dismissed with or without prejudice.  Since Plaintiff's claims fail as a matter of law, this Court finds that it is not in the interests of justice to allow amendment of the pleadings pursuant to Fed. R. Civ. P. 15(a).  Therefore, Plaintiff's Complaint is dismissed with prejudice.

## B.  Rule 12(b)(2) Motion to Dismiss and Plaintiff's Litigation on Behalf of Minor Children

Defendants argue that this Court lacks personal jurisdiction over them because Defendants have at no time had any contacts with the State of New Jersey.  They also assert that Plaintiff cannot bring this matter on behalf of his children F.A. and B.A. II since he has no parental custody rights, and if he did, a claim on behalf of the children does not meet the required elements for defamation. (Defs.' Mot. to Dismiss, at 2).  Since this Court dismisses Plaintiff's Complaint for failure to state a claim, it need not address additional jurisdictional defects or grounds for dismissal.

24

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's defamation claims is GRANTED with prejudice.

DATED: November __, 2011

/s/ Jose L. Linares
United States District Judge

25